LELAND P. CARPENTER, PLAINTIFF-APPELLANT, v. HARRY M. KILBORN AND WILLIAM H. DANE, INDIVIDUALLY AND AS PARTNERS TRADING AS DANE & COMPANY, DEFENDANTS-RESPONDENTS.

Submitted May 27, 1932—Decided October 17, 1932.

For the appellant, *Louis Auerbacher, Jr.*

For the respondents, *Whiting & Moore*.

The opinion of the court was delivered by

BROGAN, J. This is an appeal from a judgment of nonsuit in the Essex County Circuit Court.

Plaintiff below sued to recover moneys deposited by him with Dane & Company, a stock brokerage house. There was deposited with the defendant below the sum of $1,000 in cash, the sum of $1,030 realized from the sale of securities owned by the plaintiff, and one hundred and sixty-eight shares of Kraft-Phoenix Cheese Corporation stock which, it is alleged as of October 23d, 1929, had a money value of $11,572, so that in all the plaintiff had a credit of $13,602 with the defendant. The shares of stock lodged in the account were the property of one J. W. Jones and were added to the plaintiff's account in the brokerage house to strengthen it.

The plaintiff carried on a more or less active trading account. During the time of the account between the parties a sharp falling off of values and prices took place in all securities. The net result was that the customer's cash margin was wiped out, as indeed was $3,000 of the value of the shares of stock placed with the broker as collateral security.

The plaintiff sued out a complaint on three counts. First, that the dealings between the parties constituted an

unlawful transaction since they transgressed the provisions of the Gaming act of this state, known as "An act to prevent gaming." 2 *Comp. Stat., p.* 2623. The second count is based on the theory of trover and conversion, and the third upon the theory that the plaintiff was damaged because of the defendant's failure to live up to instructions and sell out the securities before a loss was incurred. The trial court nonsuited the plaintiff.

The appellant now makes two points. First, that the court below erred in granting motion for nonsuit and, secondly, that the transaction comes within the interdiction of the Gaming act.

It is plain that the motion for nonsuit was properly granted as to the first count because the evidence clearly does not bring the transactions complained of within the ban of the Gaming act. While the dealings between the parties constituted speculation in stocks upon margins yet it has not been shown nor could it be fairly inferred that the securities purchased on margins were not intended to be treated as the property of the customer. This was not a transaction dealing in differences between prices but an outright purchase of securities for the account of the customer which securities were paid for by the customer partly in cash and partly by the credit extended to him. To argue in the face of a margin account of over $13,000 that there was absolute disproportion between the amount on hand to the customer's credit and the amount of securities purchased against that account is to fly in the face of the facts in the case: The plaintiff below admitted that his margin ran from ten per cent. to thirty per cent.; ten per cent. when securities were low, thirty per cent. when securities were high. That the customer was speculating is manifest, but from this fact no one can justify the conclusion or even the inference that it was a dealing in differences.

The case upon which the appellant relies (*Flagg* v. *Baldwin,* 38 *N. J. Eq.* 219, 277), has this to say: "The act is not intended to interfere with the right of buying and selling

for speculation. The line is to be drawn between what is legitimate speculation and what is unlawful wager. When property is actually bought, whether with money or with credit, the purchaser and owner may lawfully hold it for a future rise and risk a future fall. With such transactions, the law does not pretend to interfere. They are within the line of lawful speculation."

The fact that the stock purchased was never delivered to the appellant in no way militates against it having been his property. All the evidence in the case points to the fact that this was the ordinary speculation account carried on margin where the cash of the customer and the credit extended to him by the broker enabled him to purchase the securities.

This case comes squarely within the rule laid down in *Kendall and Whitlock* v. *Fries,* 71 *N. J. L.* 401, where the court said to prove that the transaction grew out of a gambling agreement, "it is not enough to prove that stocks were bought on a margin; that the defendant was speculating; that the stocks were never assigned to the defendant, and that he bought options on cotton. These facts do not, under the circumstances in this case, justify the conclusion that the transactions were a mere dealing in differences." And they would have to be a mere dealing in differences in order to bring the acts complained of within the interdiction of the Gaming act. See *Hoil* v. *Zyskind,* 9 *N. J. Mis. R.* 561; *Thompson* v. *Williamson,* 67 *N. J. Eq.* 212.

The appellant does not contend that a nonsuit was improper as to the second count because there is nothing in the evidence to indicate that an unlawful conversion was even attempted to be proved in the court below That the stock of Mr. Jones was put into the appellant's account, to bolster it up and strengthen it, is apparent.

A reading of the testimony discloses that there was endorsed on the back of the receipt, which was given to Mr. Jones by the respondent, "For Mr. Carpenter's account." It is difficult to see for what purpose Mr. Jones' securities

would be lodged in the Carpenter account if not for the very purpose for which it was used.

The allegations of the third count of the complaint have not been made out and the proof as to the first count does not go as far or at best no farther than the proof in the case of *Kendall and Whitlock* v. *Fries, supra,* and manifestly the judgment of nonsuit was proper.

The judgment of the court below is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.